UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHRIS MACKLIN,

                    Plaintiff,                              Case No. 1:14-cv-966

v.                                                          Honorable Janet T. Neff

BRYAN BULLER et al.,

                    Defendants.

_____/

## OPINION

This is a civil action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and state law.  The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed as frivolous because it is barred by the applicable statutes of limitations.

**Factual Allegations**

Plaintiff Chris Macklin is a state prisoner incarcerated by the Michigan Department of Corrections at the Ryan Correctional Facility, though the events giving rise to the complaint occurred while he was incarcerated at the Michigan Reformatory (RMI).  He sues two prison employees at RMI, Dr. Bryan Buller and Nurse Practitioner Corey Grahn, as well as a physician at Sparrow Ionia Hospital (Sparrow), Dr. Eric Stansby.

According to the complaint, on April 21, 2011, Plaintiff was taken to the emergency room at Sparrow to be treated for a blood clot in his left arm.  Prior to that time, he had been diagnosed with stage 4 kidney disease.  To treat the blood clot, Dr. Buller and Nurse Grahn gave Plaintiff injections of 140 mg of Lovenox and 10 mg of Coumadin.  Plaintiff continued to receive these medications for the next 19 days, though he contends that the Lovenox injections should have been discontinued after 72 hours.  On May 9, 2011, he became very ill.  After eating breakfast, he started experiencing sharp pains in his abdomen.  Then he began vomiting repreatedly.  He went to the healthcare unit and told Dr. Buller that his pain was a "10 on a scale of 1-10."  (Compl., docket #1, Page ID#3.)  Buller checked Plaintiff's vital signs and stated that "everything is in order . . . this is nothing serious enough to send you to the E.R."  (*Id.*)  He refused Plaintiff's request to go to the emergency room and sent Plaintiff back to his cell with instructions to drink fluids.  Dr. Buller indicated that he would check on Plaintiff in three days.

Plaintiff returned to his cell.  For the next six and a half hours, he experienced "the most terrible pain he had ever encountered in his life."  (*Id.* at Page ID#4.)  At the next shift change, Plaintiff was taken to the healthcare unit in a wheelchair because he could not walk.  He was then taken to the emergency room at Sparrow, where doctors discovered that he had a "retropernial

- 2 -

hemmorage [sic] in his abdomen." (*Id.*) Dr. Stansby told Plaintiff that "they" should have stopped giving him Lovenox after 72 hours. (*Id.*) In addition, Plaintiff contends that he should have been given Heparin until his "INR blood level reached 2 [to] 2.5," followed by Coumadin. (*Id.* at Page ID#5.) Plaintiff was taken by helicopter to a hospital in Lansing, Michigan. By the time he reached Lansing, however, it was too late. His kidneys had failed. Plaintiff remained in the hospital for 17 days, and he continues to receive dialysis treatments three times per week.

Plaintiff claims that Defendant Buller improperly denied him medical care when Plaintiff was in pain and Buller refused to send him to the emergency room. In addition, Plaintiff claims that all three Defendants are liable for medical malpractice: Buller and Grahn for giving him too much Lovenox and Coumadin; Grahn for failing to monitor Plaintiff's "PT/INR" on a daily basis; and Dr. Stansby for "allow[ing] these medications to stand even though he should have known the risks involved with them." (*Id.*) Plaintiff filed a grievance regarding Defendants' actions in 2012. His grievance was denied as untimely.

As relief, Plaintiff seeks compensatory and punitive damages from Defendants and an injunction requiring them to arrange for a kidney transplant.

## Discussion

Plaintiff's action is untimely. With regard to claims under § 1983, state statutes of limitations and tolling principles apply. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir.

- 3 -

1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1]

Plaintiff's claims stem from conduct occurring in April and May 2011.  He had reason to know of the "harms" done to him by the time of his hospitalization in May 2011.  Hence, his § 1983 claim accrued no later than May 2011.  However, he did not file his complaint until September 2014, well past Michigan's three-year limit.  Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated.  *See* MICH. COMP. LAWS § 600.5851(9).   In addition, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations.  *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).  Thus, his claim under § 1983 is barred by the statute of limitations.

Plaintiff's claim of medical malpractice is subject to a shorter statute of limitations than his federal claim.  Generally, a claim of medical malpractice must be filed within two years from the date of accrual,[2] or "within six months of when [the plaintiff] discovered or should have discovered his claim."  *Solowy v. Oakwood Hosp. Corp.*, 561 N.W.2d 843, 845 (Mich. 1997); MICH. COMP. LAWS §§ 600.5805(1) & (6),  600.5838a.  Such a claim "accrues at the time of the act or

---

[1]28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990.  The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute.  *Id.* at 382.

[2]There are exceptions to the two-year rule for infancy, insanity and death, *see Milostan v. Troy Internal Medicine*, No. 317704, 2015 WL 213134, at *3 n.2 (citing MICH. COMP. LAWS § 600.5838a(2); MICH. COMP. LAWS §§ 600.5851 to 600.5856), but none of those exceptions apply.

omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MICH. COMP. LAWS § 600.5838a(1). The acts or omissions of Defendants occurred in April and May 2011, and Plaintiff was aware of the existence of his claim at that time. Thus, his claim accrued no later than May 2011 and expired two years later, long before he filed this action.

A complaint may be dismissed as frivolous if it is time-barred by the appropriate statute of limitations. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). The Sixth Circuit has repeatedly held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See Dellis*, 257 F.3d at 511; *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at *1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5, 2000). Accordingly, Plaintiff's action will be dismissed as frivolous.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the

$505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  January 30, 2015                            /s/ Janet T. Neff                              
                                               Janet T. Neff
                                               United States District Judge